IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-7498 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Brenda R. ("Claimant") brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIBs"). The Commissioner brings a cross-motion for summary judgment seeking to uphold the prior decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion for summary judgment, (Dckt. #15), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #20), is denied.

**I. BACKGROUND**

 **A. Procedural History**

On December 21, 2017, Claimant (then 58 years old) filed an application for DIBs alleging disability beginning October 27, 2017, due to limitations stemming from a lengthy list of physical impairments – including complex regional pain syndrome, fibromyalgia,

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

degenerative disc disease of the back, and irritable bowel syndrome, along with depression and memory loss. (Administrative Record ("R.") 121-22, 260-61). Claimant's date last insured was September 30, 2022. (R. 13). Her application was denied initially and upon reconsideration. Claimant filed a timely request for a hearing, which was held on May 27, 2020 before an Administrative Law Judge ("ALJ"). (R. 32-120). Claimant appeared with counsel and offered testimony, as did a Vocational Expert ("VE"). On August 24, 2020, the ALJ issued a written decision denying Claimant's applications for benefits. (R. 13-25). Claimant filed a timely request for review with the Appeals Council. On November 19, 2020, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-6). This action followed.

B. The Social Security Administration Standard to Recover Benefits

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically

2

acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), or her capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, she is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

    C.    **The Evidence Presented to the ALJ**

Again, Claimant seeks DIBs due to a number of physical impairments, along with depression and memory issues. Because the Court's decision relates only to the ALJ's

assessment of Claimant's non-physical limitations, it will limit its discussion of the evidence accordingly.

### 1. Evidence from Claimant's Treating Physicians

Claimant's medical records during the relevant time frame reflect continuous treatment – including medication, injections, chiropractic care, and physical therapy – for pain stemming from fibromyalgia, tendonitis of the left ankle, left knee pain, degenerative joint disease, and chronic regional pain syndrome, particularly of the right upper limb.

With respect to her mental health treatment, Claimant began weekly counseling sessions with licensed clinical professional counselor Curt Calas in February 2019. (R. 839 – 888). At her first session, Claimant reported that she was seeking treatment because she was going through a divorce and having a lot of physical symptoms. (R. 885). Calas noted a depressed mood and affect and assessed adjustment disorder with mixed anxiety and depression. (*Id.*). Claimant continued with weekly counseling sessions with Calas through August 2019, during which she described past traumatic experiences, serious health stressors, and conflicts in her ongoing divorce. (R. 843-881). Calas offered treatment through continued supportive counseling and various resources and literature. (*Id.*). Claimant returned in February 2020 and reported she was still suffering from many physical and medical issues. (R. 839). Pharmacy records reveal that Claimant was taking Clonazepam and Fluoxetine throughout portions of the relevant time frame. (R. 1072-75).

LCPC Calas completed a functional capacity questionnaire on May 7, 2020. (R. 1076-78). In it, he explained that Claimant suffers from anhedonia or pervasive loss of interest in almost all activities; appetite and sleep disturbance; psychomotor agitation or retardation; decreased energy; difficulty concentrating; panic attacks; and intrusive recollections of past

traumatic experiences. (R. 1076). Calas described Claimant's side effects from medication as shaky hands, memory loss, and trouble focusing. (*Id*.) According to Calas, Claimant would be extremely limited (i.e., precluded from work for 30% or more of a workday) in all tasks related to understanding and memory and almost all tasks related to sustained concentration and memory. (R. 1077). Calas described more mild limitations in the tasks in the categories of social interaction and adaptation. (R. 1077-78). Specific to the disability assessment, Calas determined that Claimant would: (1) have extreme limitations in her ability to concentrate, persist, or maintain pace; (2) moderate limitations in her ability to understand, remember or apply information; (3) moderate limitations in her ability to adapt or manage herself; and (4) mild limitations in her ability to interact with others. (R. 1078). Calas opined that Claimant would be absent more than four days a month. (*Id.*). Calas further stated that he based his findings on examinations, clinical observations, medical records review, and test results. (*Id*.).

### 2. Evidence from the State Agency Consultants

Claimant underwent a consultative psychological examination with Michal Ingersoll, Psy. D, on September 24, 2018. (R. 759-62). Claimant explained that her past psychiatric care involved treatment with a psychiatrist in 1998 due to a divorce and a death in the family. (R. 760). Dr. Ingersoll described Claimant as alert and well oriented, with a tearful and depressed affect, which Claimant attributed to chronic pain. (*Id.*). Dr. Ingersoll administered a digit repetition examination, during which Claimant was able to recall six digits forward and five digits backward. (R. 761). Claimant could recall just three out of four words on a five-minute delay, even upon prompting and cueing. (*Id*.). Overall, Dr. Ingersoll found her attention and short-term verbal memory to be intact and age appropriate. (*Id*.). Dr. Ingersoll diagnosed persistent depressive disorder, on no psychotropics. (R. 762).

On November 24, 2018, Leon Jackson, PhD, reviewed Claimant's file at the initial level. (R. 121-134). After reviewing the existing medical record (including Dr. Ingersoll's assessment), Dr. Jackson opined that Claimant's mental impairment of depression imposed no limitations in her ability to understand, remember or apply information but did cause mild limitations in her ability to: (1) interact with others; (2) concentrate, persist, or maintain pace; and (3) adapt or manage herself. (R. 128). Ultimately, Dr. Jackson found Claimant's depression to be non-severe. (*Id*.).

Claimant underwent a second psychological examination on April 26, 2019 with John Peggau, Psy. D. (R. 811-13). Claimant told Dr. Peggau that she has been depressed and anxious since the early 1990s, and that one of her current medications causes memory loss. (R. 811). Dr. Peggau described Claimant as alert, and mostly oriented to time; she could name the current president but not the previous one. (R. 812). Claimant could recall four digits forward and three backwards and could recall three out of four words after a delay. (*Id*.). Dr. Peggau found that Claimant's concentration was "strong" but that her "working memory by way of auditory attending, storing, and retrieving was below average." (*Id*.). Dr. Peggau noted that Claimant "presented as someone with many medical conditions that has left her struggling with many [activities of daily living]." (R. 813). He assessed her to have an adjustment disorder with anxiety and depressed mood. (*Id*.).

At the reconsideration level, Claimant's file was reviewed by Lionel Hudspeth, Psy.D. (R. 136-152). After reviewing Claimant's more recent records, including the counseling records and the second consultative examination, Dr. Hudspeth determined that Claimant has no limitations in understanding, remembering, or applying information, and mild limitations in: (1) interacting with others; (2) concentrating persisting or maintaining pace; and (3) adapting or

6

managing herself. (R. 145). Dr. Hudspeth found that Claimant's depression was a non-severe mental impairment. (R. 146).

### 3. Evidence from Claimant's Testimony

Claimant appeared with counsel at the May 27, 2020 hearing before the ALJ, and testified in great detail about her physical symptoms and limitations. (R. 32). With respect to her mental health, Claimant testified that she is often anxious, (R. 70), and has a poor memory due to her pain medications. (R. 78). Claimant explained that she often forgets even just two items on a grocery list, and forgets driving directions on streets she's known her whole life. (R. 78, 99). Claimant explained that she suffers from fatigue, difficulty sleeping, and feelings of depression. (R. 80). At the time of the hearing, Claimant had been seeing a therapist for about a year. (R. 100-01).

### 4. Evidence from the Vocational Expert's Testimony

The VE classified Claimant's past work as a "department manager" as skilled (with a specific vocational preparation ("SVP") 7) and sedentary under the DOT, but light as performed by Claimant. (R. 107). The ALJ then asked the VE to consider a hypothetical individual of Claimant's age, education, and work experience who could: perform light work, with frequent operation of foot controls; no climbing of ladders, ropes, or scaffolds; occasional balancing; frequent climbing of ramps, stairs, stooping, crouching, kneeling, and crawling; and occasional reaching with the right arm. (R. 107-08). The VE testified that such an individual could perform Claimant's past work as a department manager as generally performed. (R. 108). If the individual were further limited to occasional operation of foot controls; occasional climbing of ramps and stairs, crouching, kneeling, and crawling; simple, routine, and repetitive work tasks;

and must avoid concentrated exposure to extreme temperatures and pulmonary irritants, the individual could not perform any of Claimant's past work. (R. 109).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of October 27, 2017. (R. 15). At step two, the ALJ determined that Claimant suffered from the severe impairments of fibromyalgia, dysfunction of major joints, degenerative disease of the back, inflammatory bowel disease, gastritis and duodenitis, and recurrent arrhythmias. (*Id*.).

The ALJ further noted that Claimant suffered from the medically determinable mental impairment of depression but that this impairment "does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." (R. 16). The ALJ considered the "paragraph B" criteria for mental functioning and found that Claimant had no limitation in the ability to understand, remember, or apply information but that she had mild limitations in the ability to: (1) concentrate, persist, or maintain pace; (2) interact with others; and (3) adapt or manage herself. (R. 16-17). The ALJ found that Claimant's mental impairment was non-severe because it causes "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (R. 17) (emphasis in original). The ALJ went on to explain why he found the extremely limiting opinion of LCPC Calas to be unpersuasive and the opinion of agency consultant Dr. Hudspeth (finding no severe mental impairment) to be persuasive. (R. 17).

8

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including listings 1.04 (disorders of the back), 3.02 (chronic respiratory disorders), 4.05 (recurrent arrhythmias), 5.02 (gastrointestinal hemorrhaging), 5.06 (inflammatory bowel disease), and listings under 11.00 and 14.00 (correlating to fibromyalgia). (R. 18). Before turning to step four, the ALJ determined that Claimant has the RFC to perform light work,[2] except that she can never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs; can occasionally balance, and reach overhead and in front with the right arm; and can frequently operate foot controls bilaterally. (R. 19-24). The ALJ included no non-exertional limitations in the RFC.

Based on this RFC assessment, the ALJ determined at step four that Claimant could perform her past relevant work as a department manager as generally performed (skilled (SVP 7) and sedentary). (R. 24-25). Thus, the ALJ determined that Claimant had not been under a disability since her alleged onset date through the date of his decision, and did not proceed to step five. (R. 25).

## II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind

---

[2] "According to the Social Security regulations, '[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [and] require[s] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), *quoting* 20 C.F.R. §404.1567(b).

might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III.   ANALYSIS

#### A.   The ALJ erred by failing to account for the limitations resulting from Claimant's mental impairment when determining Claimant's RFC.

As discussed above, the ALJ found that Claimant's medically determinable mental impairment of depression was a non-severe impairment that nonetheless caused her to experience mild limitations in her ability to (1) concentrate, persist, or maintain pace; (2) interact with others; and (3) adapt and manage herself. The ALJ's finding in this regard is consistent with the findings of the state agency consultant Dr. Hudspeth, whose opinion the ALJ found to be

persuasive. Despite the ALJ's finding of mild limitations at step two – and the well settled principle that a step two analysis is *not* a residual functional capacity assessment, which requires a more detailed assessment, *see Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *5 (C.D.Ill. Mar. 27, 2023) – the ALJ did not account for any mental limitations in his RFC assessment. Nor did he explain why he believed that Claimant's mental limitations did not warrant the inclusion of non-exertional limitations in the RFC.

Claimant now asks this Court to reverse and remand the ALJ's decision to deny her award of benefits, arguing, among other things, that the ALJ failed to properly consider the limitations arising from her mental impairment in his RFC finding. Because this argument has merit, the Court finds that remand to the Social Security Administration is required, and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to re-assert them on remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v.*

11

*Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). That "a non-severe impairment may not significantly limit a claimant's ability to work when viewed in isolation" does not mean that it cannot " 'be critical to the outcome of a claim' when viewed in combination with other limitations." *Muzzarelli v. Astrue*, No. 10 C 7510, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011), *quoting* SSR 96-8p.

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g.*, *DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin*, 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand."). Moreover, "[i]f the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, she was obligated to explain how she did so." *Viviana R. v. Kijakazi*, No. 19-cv-07419, 2022 WL 3354840, at *5 (N.D.Ill. Aug. 12, 2022), *quoting Muzzarelli*, 2011 WL 5873793, at *23.

Conversely, if the ALJ did not believe Claimant's mental impairments warranted non-exertional limitations in the RFC, he was obligated to explain why. *Muzzarelli*, 2011 WL 5873793, at *23; *Joanne Y. v. Kijakazi*, No. 21-cv-1050, 2023 WL 3389367, at *6 (N.D.Ill. May 11, 2023); *Thomas G. v. Kijakazi,* No. 20-cv-5860, 2022 WL 4234967, at *5 (N.D.Ill. Sept. 14, 2022); *Viviana R.*, 2022 WL 3354840, at *5. An ALJ's failure to provide such an explanation

12

leaves the Court unable to follow the ALJ's reasoning and, therefore, requires remand so that the ALJ can provide clarification. *Muzzarelli*, 2011 WL 5873793, at *23-24; *Viviana R.*, 2022 WL 3354840, at *5 (collecting cases).

Here, although the Commissioner acknowledges Claimant's non-severe mental impairment of depression and the resulting mild limitations found by the ALJ, she argues that the "decision makes it clear that the ALJ was well aware that he had to consider the combined effects of plaintiff's impairments." (R. 21 at 7). Respectfully, the Court disagrees. Indeed, while perhaps "aware" of his duty, the ALJ made no mention in his RFC assessment of his own findings that Claimant has mild limitations in her ability to concentrate, persist, or maintain pace; interact with others; and adapt and manage herself, nor did he sufficiently explain why he did not include any such limitations. The ALJ's failure to do so is particularly troubling here where the determination of non-disability was based on the ALJ's finding at step four that Claimant had the ability to perform her past skilled work as department manager. Courts have repeatedly recognized that even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work."[3] *Cheryl C.*, 2019 WL 339514, at *3 (citing cases); *Teri D. v. Kijakazi*, No. 20 C 4999, 2023 WL 2789326, at *4 (N.D.Ill. Apr. 5, 2023); *Joanne Y.*, 2023 WL 3389367, at *5-6; *Hovi*, 2013 WL 3989232, at *16.

For these reasons, the ALJ's decision is lacking in substantial evidence and cannot be upheld. On remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mental impairment's impact in the three broad areas of mental functioning or explain why such limitations are unwarranted.

---

[3] Notably, when the ALJ asked the VE about a hypothetical individual who would be further limited to simple, routine, and repetitive work tasks, among other limitations, the VE testified that such an individual could *not* perform any of Claimant's past work. (R. 109).

## CONCLUSION

For the foregoing reason, Claimant's motion to reverse the Commissioner's decision to deny her claim for DIBs, (Dckt. #15), is granted, and the Commissioner's motion for summary judgment, (Dckt. #20), is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**ENTERED:** May 26, 2023

**Jeffrey I. Cummings**
**United States Magistrate Judge**

!
!
!
!
!
!
!